**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: Mark Leslie Kennedy, | : | Chapter 7 |
| | : | |
| Debtor. | : | Bky. No. 23-11688 (PMM) |
| | : | |
| Nancy Berrian, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Adv. No. 23-0067 (PMM) |
| Mark Leslie Kennedy, | : | |
| | : | |
| Defendant. | : | |

**O P I N I O N**

**I.  INTRODUCTION**

This matter presents a familiar though not desirable set of facts. Nancy Berrian (the "Plaintiff" or "Ms. Berrian") hired the Debtor, Mark L. Kennedy (the "Debtor" or "Defendant"), to renovate her new house located at 506 Farmview Rd. Easton, PA (the "Property"). The story does not end with an updated home and a happy customer. Rather, a few weeks after the Plaintiff signed the contract with and paid $44,172.50 to the Debtor's company, DSK Property Services, LLC ("DSK")—and work on the Property had begun—the Plaintiff terminated the contract. The deposit was not returned and the work was not completed. The question presented is who bears this loss.

For reasons discussed below, I find that the debt owed to Ms. Berrian (if any) is dischargeable in the Debtor's bankruptcy. The evidence, testimony, and argument presented at and following trial fail to show either that a debt is owed by the Debtor himself (as opposed to

1

being owed by DSK) or that the Debtor fraudulently induced the Plaintiff to enter into the contract. For these reasons, judgment will be entered in favor of the Debtor. Separately, because I disagree with the Defendant that the Plaintiff lacked justification for this lawsuit, I will deny the Debtor's motion for fees and costs pursuant to 11 U.S.C. §523(d).

## II.  PROCEDURAL BACKGROUND

The Debtor sought chapter 7 bankruptcy protection on June 8, 2023. This Adversary Proceeding, seeking denial of discharge pursuant to 11 U.S.C. §523(a)(2)(A), was filed on October 10, 2023. Following an order granting the Defendant's Motion to Dismiss (doc. #21), an Amended Complaint was filed on February 23, 2024 (doc. #23). An Amended Answer was filed on May 28, 2024 (doc. #38). A Joint Pretrial Statement was submitted by the Plaintiff only (doc. #44) and a trial was held and concluded on October 2, 2024. Following trial, and at the direction of the Court, the parties submitted briefs with regard to two (2) issues: (1) whether and how participation theory or piercing of the corporate veil is relevant and applicable to the facts presented; and (2) whether the Defendant may recover reasonable attorneys' fees pursuant to 11 U.S.C. §523(d). See doc. #'s 54, 55.

## III.  FINDINGS OF FACT

Based on the credibility of the witnesses and the plausibility of their testimony, and upon review of the relevant evidence and case docket, I make the following findings of fact.

*Background*

1. The Plaintiff closed on the Property on March 22, 2021, and moved into the home in June 2021. Tr. at 7, 9, 31.

2. The Debtor, a contractor, was referred to the Plaintiff by friends. Tr. at 7.

3. The Debtor is the owner of DSK Property Services LLC, which was founded in 2017 and currently has a value of zero dollars. Schedule A/B, doc. #1 in the main case.

4. The Plaintiff met with the Debtor in March 2021, just before she closed on the Property, and then hired DSK to renovate her house. Tr. at 8, 33-35; Ex. D-A.

*Contract and payment*

5. On March 26, 2021, the Plaintiff reviewed and signed a contract (the "Contract") with DSK to perform work on the kitchen and deck of the Property. Tr. at 8, 9, 16, 33, 34, 51; Ex. D-A.

6. The Contract specified that DSK would renovate the foyer, install a closet, build a "pony wall," renovate the kitchen with cabinets and countertops purchased by the Plaintiff, and update the deck, HVAC, back fence, basement, and garage. Tr. at 35, 38, 40, 41; Ex. D-A.

7. The agreed contract price was $88,345.00. Tr. at 20; Ex. D-A.

8. The Contract specified that work was to begin in spring 2021 and "should be completed by fall 2021 if all work is released in a timely manner." Ex. D-A at 2.

9. The Contract and communications were with DSK properties and the Plaintiff understood that she was dealing with the company. Tr. at 51, 52.

10. The Contract was signed by the Plaintiff but not by the Debtor or any other representative of DSK. Tr. at 57; Ex. D-A at 3.

11. The Contract allows for recission within three (3) days of signing, but there is no evidence that the Plaintiff timely rescinded the Contract. Ex. D-A.

12. Ms. Berrian paid DSK $25,000.00 on March 26, 2021, and $19,172.50 on April 5, 2021; the total paid was $44,172.50 (collectively, the "Deposit"). Doc. #23, Amended Complaint ¶¶11, 14; Tr. at 9; Ex. P-1.

3

13. The Debtor agreed to start work on the project in March, as soon as the Plaintiff closed on her house.  Tr. at 9, 19, 31.

14. The work was to be completed by fall 2021.  Tr. at 44, 45.

15. The Contract did not specify that the Debtor would obtain permits for the work performed.  Tr. at 28.

16. The Debtor conveyed to Ms. Berrian that obtaining permits was not contemplated by the Contract; the Plaintiff understood this to mean that permits were not required for the work performed.  Tr. at 40.

*Work performed*

17. The Debtor began work on or around the end of March 2021.  Tr. at 11, 44.

18. Work was performed by DSK's employee and skilled laborer, Terrance Myers ("Mr. Myers").  Tr. at 55; Ex. D-C.

19. Sometime between late March and early April, Mr. Myers cleaned out the Plaintiff's garage and removed the sun room paneling.  Tr. at 11, 18, 19; Ex. P-5.

20. The Debtor or Mr. Myers also placed Ram Board in the Plaintiff's living room.  Tr. at 11, 12.  The Ram Board in the foyer was left behind.  Tr. at 14, 36.

21. The Debtor covered the windows at the Plaintiff's house; the reasons for this are unclear.  Tr. at 15; Ex. P-4.

22. The Plaintiff had ordered the cabinets herself with the understanding that DSK would install them.  Tr. at 15.

23. DSK removed garbage from the garage and removed an enclosure under the deck.  Tr. at 41, 42.

24. No other work was performed by DSK at the Property.  Tr. at 13, 19.

25. After the described work was performed, the Plaintiff expressed safety concerns about the electrical system to the Debtor. Tr. at 17.

*Proposed change order*

26. Following the initial work on the Property, the Plaintiff asked for "extensive" modifications to the agreement. Tr. at 17, 46; Ex. D-D.

27. The proposed "change order" to the Contract, dated April 15, 2021, included electrical upgrades, water supply improvements, and work in the attic of the Property. Tr. at 17, 21; Ex. P-3.

28. The parties contemplated an additional fee of approximately $68,000.00 for the changes described but did not succeed in modifying the Contract. Tr. at 18, 20, 24; Ex. P-3.

*Plaintiff's dissatisfaction; termination of the contract*

29. The Plaintiff was not satisfied with the work performed by the Debtor. Tr. at 19.

30. The Plaintiff spoke with the Debtor once or twice regarding the dissatisfaction. Tr. at 23.

31. On April 16, 2021, the Plaintiff asked to terminate the Contract because the proposed change order was too costly. Tr. at 19, 20, 21, 46; Ex. P-6.

32. The stated reason for the termination was that Ms. Berrian decided to "go in a different direction." Ex. P-6. The Plaintiff believed she had the right to terminate the Contract for this reason because she is a consumer. Tr. at 46, 47.

33. Following the request to terminate, the Plaintiff offered to pay the Defendant $2,500.00 for the work performed (removal of sun room and clean out of the garage). She asked for the remainder of the Deposit back and did not respond to the Debtor's offer to perform further work. Tr. at 21, 50, 56; Ex. P-6.

34. Four (4) days after the Plaintiff terminated the Contract, on April 20, 2021, the Debtor offered in writing to complete certain specified work on the Property (including deck renovation, work on the basement and garage, and installation of a fence on the exterior). Ex. D-D (the "Letter").

35. The Letter asserts that the Debtor's out-of-pocket expenses to that date were $11,167.00 and that the expected lost profit from the cancelation of the Contract was $29,040.00, for a total loss to the Debtor of $40,207.00. Ex. D-D.

36. The Debtor did not return any funds to the Plaintiff. Tr. at 22, 49, 56; Ex. P-7.

*Fraud*

37. The Plaintiff contends that the Debtor acted fraudulently because, among other things, he started but did not complete the agreed-upon work. Tr. at 48.

38. The Defendant was previously sued personally by a client named Carla Jenkins. Tr. at 63, 64; Ex. P-13.

39. The Debtor was also sued in 2023 by his prior attorneys, Fitzpatrick, Lentz & Bubba. Tr. 64, 65; Ex. P-13.

40. The Debtor and DSK were sued after 2020 by KP Investments with regard to work allegedly not timely performed. Tr. at 66; Ex. P-14.

*State court lawsuit*

41. On March 7, 2022, the Plaintiff sued the Debtor and DSK in the Court of Common Pleas of Northampton County alleging fraud (the "State Court Action"). Tr. at 25.

42. After arbitration, on November 20, 2023, the Plaintiff was awarded a default judgment in the State Court Action (the "Judgment") against DSK only—not the Debtor—in the amount of $50,000.00. Tr. at 26, 56, 59.

43. The Plaintiff has not received any payment with regard to the Judgment. Tr. at 27, 56.

*Dissolution of DSK*

44. At no point prior to entering the Contract was the Plaintiff informed that DSK was in the process of closing. Tr. at 27.

45. DSK dissolved in December 2023. Tr. at 57.

46. Prior to its dissolution, DSK was in business six (6) or seven (7) years and performed hundreds of jobs. Tr. at 69.

47. At the time of its dissolution, DSK had outstanding debts. Tr. at 59, 60.

48. The Debtor became aware of the Judgment after the dissolution of DSK. Tr. at 59.

49. The Debtor was not aware of an obligation to notify creditors of the dissolution of DSK. Tr. at 6.

### IV. PARTIES' ARGUMENTS

The Plaintiff contends that the Debtor entered the Contract and induced her to do the same with a fraudulent intent. Tr. at 4. She points out that the Debtor did not obtain the necessary permits[1] and failed to advise the Plaintiff that DSK was dissolving. According to Ms. Berrian, the Debtor received a substantial amount of money and did basically no work. Tr. at 4. Further, the Plaintiff alleges that the Debtor made representations "with recklessness as to their truth or falsity." Tr. at 76. The Plaintiff was allegedly induced to enter the contract by these lies. Tr. at 77.

The Debtor argues, preliminarily, that he doesn't owe any money to the Plaintiff; the debt, if any, was incurred by DSK and not individually by the Debtor. Tr. at 5, 6, 74. Further, the Debtor asserts that he was removed from the job and from the Property by the Plaintiff because he would not accept her "change orders" for the original amount of the contract. Tr. at 6. Because

---

[1] Although the Contract did not specify that the permits were to be obtained by the Debtor, the Plaintiff maintains that the permits were in fact necessary for completion of the job.

7

there was no showing of fraud and the troubles were caused by the Plaintiff's change of mind or heart, he should not be held liable.  Tr at 73-5.

As evidenced by the Briefs, the parties differ with regard to their positions on piercing the corporate veil, participation theory, and the application of section 523(d).  Those legal arguments and counter-arguments are discussed below.

## V.     DISCUSSION

### A.  Was a Debt Owed by the Debtor?

### 1.  No Direct Evidence of a Debt Owed by Kennedy

The preliminary, and dispositive, question is whether a debt is owed to Ms. Berrian by the Debtor himself (as opposed to being owed by his former company, DSK).  The Plaintiff seeks relief pursuant to 11 U.S.C. §523(a).  This section exempts (under certain conditions) from discharge "an ***individual debtor from any debt*** . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses. . ."  11 U.S.C. §523(a)(2) (emphasis added).  In other words, a dischargeability action has two distinct parts: (1) whether a debt is owed, and (2) whether it is dischargeable.  "There must be a prepetition debt owed by a debtor because the exceptions to discharge do not provide a creditor with a cause of action that simultaneously creates a debt and renders it nondischargeable."  In re Childers, 651 B.R. 699, 715 (Bankr. N.D. Ohio 2023).  "An action to determine the dischargeability of a debt under § 523(a) has two components . . . The first step requires that the creditor establish that a debt is in fact owed by the debtor."  In re Mazik, 592 B.R. 604, 609 (Bankr. E.D. Pa. 2018).

8

Here, the facts show that the debt (if any) is owed by DSK to the Plaintiff and not by the Debtor to the Plaintiff. There is no dispute in this matter that the Contract[2] was entered between the Plaintiff and DSK; the Debtor was not a party. Tr. at 51, 56, 57. As a result, the State Court Judgment was entered against DSK only and not against the Debtor. See Pretrial Statement at 11; Findings of Fact 4, 5, 9.

In sum, the evidence presented does not reveal a debt owed by the Debtor to the Plaintiff.

## 2. There is No Evidence to Support Piercing the Corporate Veil

The Plaintiff does not dispute the fact that the debt is owed by DSK, the company with whom she contracted. Rather, Ms. Berrian obliquely insists that the Debtor himself is liable because DSK's actions were his.[3] According to the Plaintiff's counsel:

> DSK was an LLC . . . Mr. Kennedy was the sole owner. . . . It was all Mark Kennedy. And it's inextricable, his actions, his promises, his history, it's impossible to extract that from DSK, because even though formally it was an LLC . . . he has not presented any evidence of what DSK did to actually follow through on Ms. Berrian's work request. . . . **[I]t's impossible to say that he is not liable because DSK was basically a formality at this point**. He was the one making these promises, inducing her to pay money, and **DSK itself was just a legal fiction**.

Tr. 79-80 (emphasis added).

Piercing the corporate veil is an equitable remedy whereby "a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable

---

[2]   The Plaintiff's argument that the Contract is invalid because it was not signed by anyone from DSK is irrelevant to the issue presented. See Tr. at 45, 57, 76. The Plaintiff is correct that the Home Improvement Consumer Protection Act requires signature of the contractor. However, the statute provides that an unsigned contract is not "enforceable *against an owner*." 73 Pa. Stat. Ann. § 517.7 (emphasis added). Here, Ms. Berrian— who is the owner of the Property—relies, in part, on the terms of the Contract in order to pursue an action against the principal of the contactor; there is no cause of action against the owner herself. Further, whether or not the Debtor signed the contract is not probative as to whether he fraudulently induced the Plaintiff to do so. That is, it remains unclear why or how failure to sign a contract would serve to advance a nefarious intent.

[3]   The Plaintiff states in her Brief that "[n]either participation theory nor the piercing of the corporate veil is relevant or applicable to the facts presented in this case." Pl.'s Brief at 4. Yet she goes on to assert that both doctrines are applicable.

9

for the debts of the corporation." In re Blatstein, 192 F.3d 88, 100 (3d Cir.1999) (internal quotation marks and citation omitted). The corporate veil is pierced only when it is determined that "the corporation was an artifice and a sham to execute illegitimate purposes and [an] abuse of the corporate fiction and immunity that it carries." Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1521 (3d Cir. 1994) (internal quotation marks and citations omitted). The doctrine allows a litigant to charge a person or entity controlling a corporation with "derivative liability." U.S. v. Bestfoods, 524 U.S. 51, 64 (1998).

"Because piercing the veil takes the extreme step of disregarding the formal structure of the corporation, there is a strong presumption against imposing such liability." In re Gigliotti, 507 B.R. 826, 833–34 (Bankr. E.D. Pa.), aff'd sub nom. Black v. Gigliotti, 514 B.R. 439 (E.D. Pa. 2014), aff'd sub nom. In re Gigliotti, 619 F. App'x 200 (3d Cir. 2015). When deciding whether to allow the corporate veil to be pierced, courts will consider the following factors: "1) insufficient capitalization; 2) intermingling of funds; 3) non-functioning officers and directors; 4) absence of corporate formalities; 5) failure to pay dividends; and 6) outward representation of sole proprietorship as opposed to incorporation." In re Jamuna Real Est., LLC, 445 B.R. 490, 502 (Bankr. E.D. Pa. 2010). The central question is whether the individual(s) in charge of the company completely dominated the corporation for personal gain and equity requires holding them personally liable.

Evidence regarding DSK's corporate form (or lack thereof), the company's finances and funding, and or absence of corporate formalities was not produced at trial. While the Plaintiff did assert that the Debtor knew that DSK was underfunded and would be dismantling, she offered no reason to conclude that these facts, even if true, indicate that the corporation was a mere façade for the Debtors dealings. In fact, the Debtor testified both that he became aware of the Plaintiff's

10

Judgment only after the dissolution of DSK and that he was not aware of an obligation to notify creditors of the dissolution of the company. See Findings of Fact 44, 45. These facts do not support the extreme determination that the corporate veil should be pierced in order to allow the Plaintiff to pursue the Debtor for the obligations of DSK.

### 3. Participation Theory of Liability is Not Supported

Participation theory, also cited by the Plaintiff as grounds to impose liability on the Defendant himself, is distinct from piercing the corporate veil. The doctrine does not question the legitimacy of the corporate form; it looks only to whether the corporate officer or director should properly be held personally liable for their individual actions. See 3A Fletcher, *Cyc. Corp.* §1137; Accurso v. Infra-Red Servs., Inc., 23 F. Supp. 3d 494, 506-12 (E.D. Pa. 2014). Normally, an officer or director of a corporate entity is not personally liable for the torts of the corporation simply because of their office. 3A Fletcher, *Cyc. Corp.* §1137. However, Pennsylvania recognizes a "participation theory," by which officers or directors are liable for wrongful acts in which they personally participate. Wicks v. Milzoco Builders, Inc., 503 Pa. 614, 621-22 (1983). A plaintiff must identify misfeasance (as opposed to nonfeasance) by the officer personally for liability to attach. See Knuth v. Erie-Crawford Dairy Co-op. Ass'n, 463 F.2d 470, 481 (3d Cir. 1972) (finding principals could be personally liable for knowingly authorizing the sale of products at an illegal rate).

Participation theory applies in tort claim but not breach of contract. While a corporation can only act through its agents, those agents cannot be held liable on contracts made with the corporate entity. See Loeffler v. McShane, 372 Pa. Super. 442, 448 (1988). Only if an agent

11

makes promises in his individual capacity and intends to bind himself individually can he be held liable on the contract. Id.

Here, the Plaintiff argues that participation theory should apply to impose liability on the Debtor because he "perpetrated a fraud . . . [h]e told Plaintiff no permits would be needed for the work, in violation of legal requirements [and] failed to comply with the requirements of HICPA . . . ." Pl.'s Brief at 6. This position is untenable because none of the allegations has been proven; the Plaintiff has demonstrated neither that a wrongful act occurred nor that the Debtor participated in any such act. As discussed below, it is not apparent that a fraud was perpetrated by the Debtor (or by DSK). Further, the evidence demonstrated that the Contract did not specify that permits would be obtained prior to the construction. Finding of Fact 15. Nor has proof been submitted that the agreement violated the Home Improvement Consumer Protection Act. See supra note 1. Therefore, the debt owed by DSK to the Plaintiff cannot be imposed on the Debtor.

The law relied on by the Plaintiff supports this conclusion. See Kaites v. Com. of Pa., Dep't of Env't Res., 529 A.2d 1148, 1152 (Pa. Commw. Ct. 1987). Kaites reversed the imposition of liability by the Environmental Hearing Board on the company's principal, finding that there was insufficient evidence to support the application of the participation theory. The Court stated:

> Absent evidence which would support "piercing the corporate veil," we do not believe that Pennsylvania law supports the imposition of strict liability on a corporate officer such as Petitioner simply by virtue of his managerial position. . . . Our holding here is controlled by the lack of sufficient evidence demonstrating that Petitioner has contributed, by personal actions of neglect or misconduct, to the [malfeasance of the company].

Kaites, 529 A.2d at 1152. The same is true here. Ms. Berrian essentially argues that because the Debtor is solely in charge of a company which did not complete the work as agreed, he is liable for the amount determined to be owed to the Plaintiff from the company. Such reasoning, without the benefit of specific and convincing evidence showing that a principal's individual actions

12

caused the harm, runs afoul of the well-established concept that the corporate form protects individuals from liability.[4]

### B. In the Alternative: No Evidence of Fraud

Although the Plaintiff cannot prevail on her Complaint due, as just discussed, to the fact that she is not owed anything *by the Debtor himself*, her cause of action also fails on the merits of the nondischargeability allegations themselves. In other words, the facts presented at trial did not show that the Debtor fraudulently induced the Plaintiff to contract for the home renovation.

#### 1. 11 U.S.C. §523(a)(2)(A)

Because bankruptcy is designed to allow debtors a reprieve from the weight of personal debt, "[e]xceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors." In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995).

The Plaintiff seeks denial of discharge pursuant to §523(a)(2)(A), which states that an individual will not be discharged from a debt

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . .

To except a debt from discharge under §523(a)(2)(A), the false representations giving rise to the debt must have been knowingly and fraudulently made. See 4 Collier on Bankruptcy P 523.08

---

[4] The Plaintiff's *res judicata* argument is misguided; she asserts that the State Court's overruling of the Defendant's preliminary objection with regard to piercing the corporate veil is preclusive in this Court. Pl.'s Brief at 11. *Res judicata* allows a prior judgment to be dispositive if the following elements are met: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." Bd. of Trustees of Trucking Emps. of N.J. Welfare Fund, Inc. – Pension Fund v. Centra, 983 F.2d 495, 504 (3d Cir. 1992).
While the Debtor was a party to the State Court Action, the suit was not based on the same allegations (here, the statute at issue is §523 of the Bankruptcy Code) and, critically, the State Court did not issue a final judgment. Rather, Common Pleas Judge Morganelli overruled the Defendants' *preliminary objection* to the count seeking to pierce the corporate veil of DSK. This decision allowed the allegation to proceed to the fact finding stage; no final determination was made. In fact, the State Court Opinion calls the allegations with regard to piercing the corporate veil "threadbare" and expresses "doubt" that the Plaintiff will be able ultimately to overcome the strong presumption against piercing the corporate veil. Pl.'s Brief, Ex. A at 10. The Plaintiff did not prevail in the State Court and cannot use a thin escape from dismissal of that portion of the Complaint as a trump card here.

(16th 2023). A "false representation" involves a misleading affirmative statement, whereas a "false pretense" is conduct that "fosters a false impression." In re Ricker, 475 B.R. 445, 456 (Bankr. E.D. Pa. 2012); In re Giquinto, 388 B.R. 152, 174 (Bankr. E.D. Pa. 2008). The elements of §523(a)(2)(A) require a showing of fraudulent intent to deceive at the time the debt arose. In re Oakley, 503 B.R. 407, 432 (Bankr. E.D. Pa. 2013), aff'd, 530 B.R. 251 (E.D. Pa. 2015) (evaluating circumstantial evidence of the case and characteristics of the parties).

To make a prima facie case of false representation under §523(a)(2)(A), a plaintiff must demonstrate that: (1) the debtor made a false representation; (2) which at the time of the representation, the debtor knew, or believed, was false; (3) the false representation was made with the intent and purpose of deceiving the creditor; (4) the creditor justifiably relied upon the representation; and (5) the creditor sustained damages as a proximate result of the misrepresentation. In re Didio, 607 B.R. 804, 816 (Bankr. E.D. Pa. 2019). The Plaintiff must prove each element by a preponderance of the evidence.

### 2.    Insufficient Evidence of the Debtor's Fraud

The Plaintiff alleges that the Debtor promised certain actions and results but failed to deliver—that he has a pattern "of playing fast and loose with his obligations." Tr. at 48, 78. She complains that the Defendant never intended to complete the job and, consequently, failed to follow through on promises made to the Plaintiff. Tr. at 78-80; Pl.'s Brief at 7. According to Ms. Berrian, the Debtor lied about how long the work would take and when it would be completed. The Plaintiff also insists that the Debtor acted fraudulently because he knew DSK was dissolving but failed to let the Debtor know her rights with regard to dealing with a liquidating company. Tr. 76-78. Further, Ms. Berrian points out that the Debtor has previously been sued for fraud. Tr. at 76.

14

The evidence shows that the quality of the Debtor's work may not have been the best; he left Ram Board behind and installed unsightly coverings in the living room. Findings of Fact 19, 10. However, poor workmanship does not on its own amount to fraud. See e.g., In re Barr, 194 B.R. 1009, 1017 (Bankr. N.D. Ill. 1996) (performing subpar work as a contractor is not evidence of fraudulent misrepresentation); In re Roggasch, 494 B.R. 398, 407 (Bankr. E.D. Ark. 2013) (evidence of negligence or shoddy workmanship does not establish false representation with intent to deceive).

At bottom, there is no demonstration here of the critical elements of a nondischargeability cause of action. Even if we assume that the Debtor's promises about the timing and quality of the work to be performed were unrealized, evidence was not presented which would show that the Debtor knew the representations were untrue prior to making them or that he intended to deceive the Plaintiff. The record reveals, to the contrary, that the Debtor intended to and made every effort to complete work on the project. Finding of Fact 34. The job at the Property was left incomplete not because the Debtor absconded with payment, but because the *Plaintiff* canceled the Contract, due to the fact that the changes she wanted were too expensive and she wanted to go in a "different direction." Finding of Fact 31, 32.

Ms. Berrian insists that the Debtor's failure to inform her that DSK was about to go out of business indicates his fraudulent intent but, again, the evidence is to the contrary. DSK closed more than two (2) years after the Contract was formed. Finding of Fact 5, 45. The Debtor was not aware of the Judgment owed to the Plaintiff or of any obligation to inform the Plaintiff of DSK's financial difficulties. Finding of Fact 48, 49. Even if the Debtor knew in early 2021 (as he entered a business relationship with the Plaintiff) that his business was not doing well, this knowledge would be probative evidence but would not be tantamount to a determination of

15

fraudulent intent.[5] In the final analysis, the Plaintiff failed to elicit testimony or to offer evidence that the Debtor defrauded her.

### C. 11 U.S.C. § 523(d)

Finally, I address the Defendant's argument that because the Plaintiff pursued a lawsuit that was meritless and possibly futile, Ms. Berrian should be liable for the Defendant's costs and fees.

The request for fees was made by oral motion[6] at the conclusion of the trial and pursuant to 11 U.S.C. §523(d). The Debtor contends that the imposition of fees is warranted due to the Plaintiff's "harassment" of the Debtor as well as the fact that the Plaintiff failed to present evidence for her frivolous cause of action. Tr. at 75; Def. Brief at 7-8.

Section 523(d) provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. §523. To succeed on a §523(d) claim, a debtor must establish five elements: the creditor must bring a dischargeability complaint under section 523(a)(2); the complaint must concern a consumer debt; the debt must be found to be dischargeable; the court must find that the creditor's complaint was not substantially justified; and there must be no special circumstances which would

---

[5]  Likewise, evidence of previous lawsuits against the Debtor are not probative of the Debtor's intent with regard to his dealings with regard to this matter; nondischargeability under §523(a)(2)(A) requires a showing of scienter "*at the time* the debt was incurred." In re Singh, 433 B.R. 139, 163 (Bankr. E.D. Pa. 2010) (emphasis added).

[6]  The Rules do not contemplate oral motions. See L.R. 7005-1; 9014-1; 9014-3. Further, and relatedly, the request for this relief at the end of trial did not allow Plaintiff notice and a chance meaningfully to respond at the hearing. This procedural defect provides alternative grounds for denying relief, though, as discussed in the text, the §523(d) Motion will be denied on the merits.

16

make the award of attorney's fees unjust. In re Ritter, 404 B.R. 811, 831 (Bankr. E.D. Pa. 2009) (citing In re Leonard, 158 B.R. 839, 846 (Bankr. D. Colo. 1993)).

Facts that suggest a claim was not substantially justified include the following: failure to inspect your own documents prior to bringing the action, bringing an action known to be frivolous to compel settlement, failing to take steps during a creditors' meeting to investigate whether facts existed meriting nondischargeability, and continuing to pursue an action after knowing your own evidence would not support a verdict. See In re Woods, 69 B.R. 999, 1003 (Bankr. E.D. Pa. 1987) ("where the creditor's own evidence is not sufficient to sustain a necessary element on which the creditor will bear the burden of proof, the creditor cannot establish that its actions were 'substantially justified'").

"Substantially justified" is a totality of the circumstances test, looking at whether facts and circumstances indicate the plaintiff continued her action past a point at which she knew, or should have known, she could not carry her burden of proof. See In re Dizinno, 559 B.R. 400, 409 (Bankr. M.D. Pa. 2016) (citing In re Williams, 224 B.R. 523, 530 (B.A.P. 2d Cir. 1998)). Some courts apply a three-part test, assessing whether the plaintiff had "a reasonable basis in law for the theory it propounds; a reasonable basis in truth for the facts alleged; and a reasonable connection between the facts alleged and the legal theory advanced." Dizinno, 559 B.R. at 409 (citing In re Pappan, 334 B.R. 678, 683 (B.A.P. 10th Cir. 2005)).

Although the Plaintiff's cause of action here was not successful, it would be incorrect to say pursuing the matter was not "substantially justified." The Plaintiff provided credible evidence that the work performed was substandard, that she lost money in the transaction, and that she was dissatisfied. Further evidence showed that the Debtor formed an LLC without fully understanding the ramifications of the burdens and duties of such an entity. The Plaintiff has doggedly and in

17

good faith pursued the action against the Debtor in state court and in this court. Ms. Berrian is not undamaged or unaffected by this long pursuit. And while, for the reasons detailed, the Plaintiff will not prevail, her cause of action is not—as the Debtor insists—frivolous.

For these reasons, the Debtor's §523(d) motion will be denied.

## VI. CONCLUSION

Ms. Berrian's dissatisfaction with the quality and amount of work performed at her house is understandable; she paid a substantial amount of money and received little in return. Her plans for an updated new house were delayed, if not derailed. But the Code does not offer a remedy for this unfortunate situation; bankruptcy is designed to give the financially vulnerable a fresh start, not to punish tradesmen who don't perform. The chapter 7 Debtor here is entitled to discharge his unsecured debts unless the creditor can point to an applicable exception. The Plaintiff insists an exception for fraudulent inducement of the debt applies here, but she has not offered sufficient evidence that the Debtor owes her money because he fraudulently induced her into a contract. To the contrary, the evidence provided at trial supports the finding that there was a good faith—if flawed—effort of the Debtor to get the job done. For these reasons, the Plaintiff's cause of action is not successful. Further, as discussed, the Defendant's pursuit of attorney's fees must also fail. An appropriate order will be entered.

*/s/ Patricia M. Mayer/*

**Date:** January 22, 2025

                              **PATRICIA M. MAYER**
                              **U.S. BANKRUPTCY JUDGE**